## HEBERT v. CITY OF NEW ORLEANS.
### No. 16145.

Court of Appeal of Louisiana.   Orleans.
Oct. 7, 1935.

Edward M. Robbert, City Atty., and Alvin R. Christovich, Asst. City Atty., both of New Orleans, for appellant.

Gerard A. Rault, of New Orleans, for appellee.

LECHE, Judge.

This is an action ex delicto. Miss Amelia Andrepont, a lady 63 years old, sister of plaintiff, while traversing the sidewalk of one of the streets of New Orleans, fell and sustained injuries. Some twenty days later she died as the result of attending complications.

Plaintiff, claiming that the fall was caused by defects in the sidewalk, seeks judgment against the city of New Orleans in the sum of $20,000, making claim not only for the loss sustained by her in the death of her sister, but also for the amount which she alleges her said sister would herself have been entitled to recover had she lived.

The city of New Orleans interposes several defenses. In the first place, it contends that if the sidewalk was defective it had no knowledge, actual or constructive, of the said defects.

It maintains that Miss Andrepont, prior to the accident, had traversed the sidewalk in question on numerous occasions and had become aware of its condition, and it contends that if, in fact, it was defective, she knew or should have known of the defects, and that therefore the fall resulted from her own contributory negligence in not exercising sufficient care in passing over the dangerous spot. Lastly, the city asserts that, since the deceased had previously used the sidewalk on many occasions and had become familiar with its condition, she should have known that it was dangerous to attempt to pass at that point, and that,

therefore, her failure to avail herself of another safe route, of which there were several, is sufficient in itself to bar recovery for her injuries and death.

In the district court there was judgment for plaintiff in the sum of $3,500. Defendant has appealed.

■ The record leaves no doubt that the sidewalk was dangerously defective and that the accident would not have occurred except for the defects. We are convinced that the pavement was broken to such an extent that the remaining pieces somewhat resembled stepping stones. We are further convinced that, as Miss Andrepont stepped from one of these fragments of pavement to another, the latter sank on the edge on which she stepped, and that, as a result, she fell to the ground.

It is negligence to permit a sidewalk to remain in such condition.

■ The record shows that the sidewalk had been broken and defective for several years, and there is uncontradicted evidence to the effect that, during that period of time, defendant municipality had been actually notified of defects in the pavement in front of the premises immediately adjoining those in front of which the accident occurred. It is shown by the city itself that it is customary, when such a complaint is made, for the repair crew which makes the repairs to inspect the other pavements in the immediate vicinity and to make such other repairs as may seem to be necessary.

Defendant points to this evidence and contends that it shows that since such inspection was made the defect now complained of could not have existed at that time; the argument being that, if it had existed, manifestly it would have been discovered and the necessary repair would have been made. But the testimony showing that the defect did exist at that time is positive in character and is overwhelming. We find, then, that when the inspection in question was made the defect existed. It should have been discovered.

■ There are many decisions which firmly establish the rule that a municipality is not liable in such cases as this unless it has had actual or constructive knowledge of such a defect. Linxwiler et al. v. City of Shreveport (La. App.) 151 So. 81; Wiltz v. City of New Orleans, 2 La. App. 444; Collins v. Lyons, 9 La. App. 736, 737, 120 So. 418; James v. City of New Orleans (La. App.) 121 So. 879; Miller v. City of New Orleans (La. App.) 152 So. 141. But we deem it to be axiomatic that a municipality, like an individual, must be held to have obtained such knowledge as an inspection which is shown to have been made should have disclosed. In Kernstock v. City of New Orleans, 147 So. 371, 372, we said:

"We conclude that had the superintendent made an examination of the rail he could not have failed to discover its true condition. It will not suffice for a city to set up as a defense a want of actual knowledge where it is shown that a reasonable compliance by any particular employee with the requirements of his position would have afforded such knowledge.

"We do not mean to say that it is necessary that inspections be made at any particular intervals, though in some cases constructive knowledge could easily result from failing to make inspections with reasonable frequency, but we do say that where an inspection is made the city must be charged with knowledge of such condition as any competent inspector should have discovered. It will not do for such inspector to merely say that he did not see the defect.

"Defendant is thus bound by such knowledge as its superintendent should have acquired when he inspected the rail, and we think that he should have, by that inspection, received knowledge of the defect here complained of."

The defendant, then, must be charged with knowledge of the defective condition of the sidewalk in question.

■ Miss Andrepont was not at fault in using the sidewalk at that point. While it is true that there were defects, there was nothing to indicate to her that, by the exercise of care, she could not pass there without mishap. Apparently she could step from one stone to another, or from one fragment to another, with complete safety so long as each remained stationary. She was not negligent in attempting to do what she did and what she could do so long as the fragments remained as they seemed to be.

■■ Nor was she at fault in choosing that route. It must be conceded that there can be no recovery where a person is injured as a result of attempting to traverse an obviously dangerous route when there is another safe one available. Moise v. New Orleans Public Service, Inc., 19 La. App. 703, 140 So. 505; Johnson v. Canal & Claiborne R. Co., 27 La. Ann. 53; Settoon v. Texas & P. Ry. Co., 48 La. Ann.

807, 19 So. 759; Lecarpentier v. New Orleans Public Service, Inc., 13 La. App. 113, 126 So. 248. But, though that doctrine is applicable in suits against municipalities, as well as in all others, it cannot be said to extend so far as to require us to hold negligent, as a matter of law, a person who uses a route which, though not perfect, still may be safely used with ordinary care simply because there was available another route beset with no dangers whatsoever. It is seldom that two streets are found in exactly the same condition. Almost always, one is a little better than the other, and it cannot be said that, when a pedestrian uses the one in which there may be minor defects and, by chance, is injured, his right to proceed ex delicto is absolutely barred by the fact that a safer route was available. It is only where there are obvious dangers in the route selected that the doctrine contended for may be said to apply to such an extent as to bar recovery as a matter of law. The question was interestingly discussed in Mosheuvel v. District of Columbia, 191 U. S. 247, 258, 24 S. Ct. 57, 59, 48 L. Ed. 170, 174, in which Mr. Justice Edward Douglass White, as the organ of the court, used the following language:

"It is insisted * * * that where a defect existed in a highway, and was known to one who elected to use such highway, such election, even if it were justified by the dictates of ordinary prudence, nevertheless must be held, as a matter of law, to entail the consequences of a want of ordinary care and prudence * * * We are of the opinion, however, that the rule as thus contended for is unfounded in reason and unsupported by the weight of authority. When analyzed, the proposition comes to this, that no person can, as a matter of law, without assuming all the risk, use the streets of a municipality where he knows of a defect therein, even although it be that, in the exercise of a sound judgment, it might be deemed that with ordinary care and prudence the street could be used with safety. The result of admitting the doctrine would be to hold that all persons in making use of the public streets assumed all risks possibly to arise from every known defect or danger. * * * There may undoubtedly be found in some of the adjudged cases concerning the right to recover for damage suffered from the neglect of a municipality to repair a highway, expressions which lend support to the proposition relied on, and it may be true to say, also, that there are some cases which seem to directly support the contention. But, as we have shown, such a doctrine is inconsistent with reason, and, as we shall now proceed to point out, is in conflict with what we deem to be the weight of authority."

The Supreme Court of Louisiana, in Robertson v. Town of Jennings, 128 La. 795, 55 So. 375, 379, referred to the Mosheuvel Case and used the following language:

"According to the doctrine of the case cited, the plaintiff Mrs. Robertson would not have been guilty of contributory negligence if in attempting to step across the hole left by the missing plank she had stepped into it. As a matter of fact, however, she was successful in her attempt to step across the hole, and she deliberately and with intention placed her foot upon a plank constituting part of the sidewalk upon the other side, because it appeared to be safe, and she believed it to be so, which is just the reverse of deliberately encountering an obvious danger."

It will readily be seen that the facts of that case very closely resembled those in the case at bar.

We believe that the pavement was defective, that the city must be charged with knowledge of the defect, and that the deceased was not at fault either in selecting the route, or as a result of her failure to use ordinary care.

The record shows that the deceased had lived in New Orleans for approximately fifteen years and that plaintiff lived, so far as we can ascertain, in one of the country parishes. The sisters visited each other usually two or three times during the year. There seems to have been no dependency of either on the other, except that plaintiff contributed slightly to the support of her deceased sister. In Quaid et al. v. Heymann et al., 150 So. 867, we considered a situation somewhat resembling this and allowed to a sister $1,000 for loss of companionship. We believe the allowance is approximately correct and pass to a consideration of the question of how much the deceased would have been entitled to on her own behalf had she lived. She died twenty days after the injury, and, while there seems to have been no severe pain, nevertheless she must have suffered to some extent and was extremely uncomfortable due to bed sores and other conditions which attended her illness. We do

not believe that $2,500 for this suffering is excessive.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, affirmed, at the cost of appellant.

Affirmed.