AYRES, Judge.
The plaintiffs are husband and wife. They instituted this suit against the City of Monroe to recover damages for injuries sustained by Mrs. Hamilton in an accident while walking along a street of the city, and more particularly while attempting to step down from the sidewalk and curb to the street, and for medical and hospital expense and salary of an attendant incurred on account of said injuries.
As a basis for defendant’s liability, plaintiffs averred in their petition:
“That on or about the seventeenth of January, 1953, at approximately 11:00 a. m., your petitioner, Mrs. Dora Hamilton, and her husband, James C. Hamilton, were walking on the sidewalk on the east side of Jackson 'Street, Monroe, Louisiana, in front of Troy & Nichols Insurance Agency, directly in back of and to the rear of two ladies who stepped down from the sidewalk to the street at the southeast comer of the intersection of Jackson Street with Harrison Street, and that when she attempted to cross the street, walking from the sidewalk to the street, the heel of the shoe of her left foot struck and caught under a steel rod which had become loose from the ' edge of the curbing and was protruding about two inches above the sidewalk, causing her to fall in the street.
“ * * * that the steel rod was used in binding the curbing at the edge of the sidewalk, and that it had become detached from the sidewalk and broken or separated from the other portion of the steel rod that was binding the remainder of the curb; and that it was protruding about two inches above the sidewalk; and that when the heel of Mrs. Dora Hamilton’s shoe became caught in the detached or broken steel rim, that it cut or tore the heel off of the shoe and precipitated Mrs. Hamilton to the street”.
It was further alleged that the city had caused the concrete sidewalk at the scene *577 of this accident to crack and sluff off by-breaking or cutting the sidewalk for the installation of electrical power lines some two years prior to the date of the accident. During that period of time, it was alleged that the city and its employees had actual or constructive notice of this defective condition in the sidewalk and had failed to repair it.
Defendant denied the material allegations of plaintiffs’ petition, and particularly denied it had any constructive or actual knowledge or notice of any defect in the curbing, if such defect existed. In the alternative it was alleged that the sole cause of the accident was the independent and contributory negligence of plaintiff “in that she failed to exercise ordinary care in crossing the street at the point alleged, and in not keeping a proper lookout, and in not watching where she was going and stepping into the street without taking any precaution whatever; without observing ordinary care, and without seeing that which was obvious and apparent”.
Defendant further averred its lack of notice and knowledge of the steel rod protruding above the sidewalk and alleged that if such condition existed for any appreciable length of time such did not constitute a trap, was not a dangerous condition and was not negligence.
An exception of no. cause and of no right of action was filed and overruled by the trial court. With reservation of all rights thereunder, defendant answered, and, after trial, judgment was rendered rejecting plaintiffs’ demands and dismissing their suit at their cost. From that judgment an appeal was taken to this court.
The exception has been re-urged before this court, but our conclusion as to the proper determination of this matter on the merits dispenses with the need for further consideration of the exception.
Mr. W. I. Neel, civil engineer, with thirty-five years’ experience and formerly city engineer for the defendant, testified for plaintiff, describing the circular turn at the southeast corner of the intersection, the scene of the accident, as having been crumpled considerably, probably by expansion and contraction, and cracked badly, small pieces of which had fallen away, leaving exposed the steel curb guard, which was broken at one point and curled up, possibly an inch or two above its normal position. An imprint of the rod could be seen where it was imbedded in the curbing. This condition, in the witness’ opinion, was the result of natural contraction and expansion due to weather conditions over a considerable period of time as there was no evidence of any new construction.
Mr. Wayne H. Hackaby, Commissioner of Streets and Parks of the City of Monroe and a registered engineer, corroborated Mr. Neel on the point that natural causes were responsible for the aforesaid condition, but added that abrasive action of wheels and impact of wheels turning the corner and striking the curb aided the natural wear and depreciation existing, in the sidewalk and curb. His first notice or knowledge of the existence of the alleged defect was when defendant’s attorney called him after the accident. On going to the scene he saw the metal strip from across the street, which was clearly visible and readily observable by any one. There was nothing concealed about it. It was his opinion that the curb and sidewalk were maintained in a reasonable safe condition for persons who used them and exercised ordinary care and prudence.
Mr. Luther T. Harper, the present City Engineer, reiterated the lack of notice or knowledge on the part of the defendant of the existence of any defects in the street or sidewalk.
Mr. James C. Hamilton, one of the plaintiffs, testified, from an inspection of the scene made subsequent to the accident, corroborating the other witnesses as to the broken concrete and curb, and showed there was a steel rim on top of the curbing which could be pressed' down with his foot and on being released would come back up. Plaintiffs’ testimony shows they had walked along the sidewalk and stopped to await a change in traffic signals whereupon two *578 ladies preceded them off the sidewalk and curb to the street. Following these ladies and as she likewise walked forward, Mrs. 'Hamilton’s shoe heel caught on the steel rim, causing her to fall to the street, breaking her leg below the hip. The accident happened between 10:00 and 11:00 A.M. on a bright day.
In the case of White v. City of Alexandria, 216 La. 308, 43 So.2d 618, 620, wherein plaintiff in the nighttime sustained injuries in an accident from a defect in a sidewalk in the middle of a city block, which was unlighted and without warnings or lights of any kind to indicate to pedestrians the existence of a dangerous fetep-up in the sidewalk, the Supreme Court, citing many of the cases of this State involving sidewalk accidents, stated:
“From this jurisprudence there have evolved certain legal principles which are to be considered in determining the instant controversy. Thus, a municipality is not an insurer of the safety of pedestrians. It must keep the sidewalks reasonably safe, but the maintaining of them in perfect condi- , tion is not necessary. To render it liable in damages the defect complained of must be dangerous or calculated to cause injury. Defects in sidewalks that are not in the nature of traps, or from which danger cannot reasonably be anticipated, provide no actionable negligence. Such ways of passage are intended for public use, of course, and a pedestrian is entitled to assume that they are not dangerous. Further, he is not required to constantly observe the surface of the walk or to exercise the care that would be necessary in traversing a jungle. However, he cannot be completely oblivious of its condition; he must exercise ordinary care when using it, having in mind the well recognized fact that throughout every city of any size in this state there exist irregularities in the walkways brought about by natural causes such as rains, expansion, soil erosion and tree roots.
“For determining what is a dangerous defect in a sidewalk (that which renders the municipality responsible in damages to a pedestrian injured as a consequence thereof) there is no fixed rule; the facts and surrounding circumstances of each particular case control. The test usually applied, however, requires an answer to the question of whether or not the walk was maintained in a reasonable safe condition for persons exercising ordinary care and prudence.”
Again, referring to the facts of the instant case, the defects complained of resulted from natural causes and from the usual wear and tear through use. The evidence shows that people in great numbers, at most all hours, day and night, crossed the street where plaintiff fell and sustained injuries, and none of them had an accident of any kind. There is no evidence that the City or any of its departments or heads of those departments had any knowledge of the defects complained of, or that such conditions existed for an appreciable length of time as would create a presumption of knowledge on the part of the defendant or of its officials, and that they had failed to make the necessary repairs within a reasonable time thereafter.
The condition was not in the nature of a trap. In dealing with a very similar situation, the Supreme Court further stated in the White v. City oí Alexandria case:
“Returning to the facts of the instant case the inequality in question, as above shown, resulted from natural causes, not by any deliberate act of the defendant. Moreover, it could be readily and easily observed, both during daytime and at night, by any one proceeding along the walk prudently. This is established by testimony of the witnesses. It is also indicated by the proved circumstances that during the defect’s existence of several years no person, other than this plaintiff, was injured thereby or complained of it to the city, notwithstanding that it was *579 located in a semi-business district and the sidewalk was used frequently.
“Therefore, it must be concluded that the elevated slab which plaintiff encountered while hurrying along to church was-not dangerous or calculated to cause injury, and that the sidewalk at that point was maintained in a reasonably safe condition for persons exercising ordinary care and prudence. From which it follows that the defendant is not responsible in damages for the injuries sustained”.
In the case of Massicot v. City of New Orleans, La.App., 43 So.2d 621, 623, plaintiff appealed from a judgment rejecting his demands for damages for injuries sustained as a result of a fall at a street intersection where he alleged that about 9:30 P.M., while attempting to cross the street and in walking from the sidewalk to the street, he “struck and caught his foot under a steel rod which had left the curbing and was protruding about 2 inches above the sidewalk”; that “the steel rod was exposed for a space of about two or more inches above the broken piece of concrete”; and that “he was thrown forward and sustained severe injuries”. The Orleans Court of Appeal concluded that plaintiff had not successfully carried the burden of proving that the City failed or neglected to keep the sidewalk reasonably safe for pedestrians. The court then stated:
“A municipality is not the insurer of the safety of pedestrians; White v. City of Alexandria, supra; Linxwiler, v. City of Shreveport, La.App., 151 So. 81; Collins v. Lyons, 9 La.App. 736, 120 So. 418; James v. City of New Orleans, La.App., 121 So. 879. The bare fact that the plaintiff fell does not warrant a recovery of damages.
“Even assuming, arguendo, that the sidewalk possessed defects sufficient to have caused the accident, and that defendant had constructive knowledge thereof, a recovery would nonetheless be denied plaintiff because it abundantly appears that he was guilty of negligence which contributed to his fall. A pedestrian may assume that the sidewalk is reasonably safe, and need not keep his eyes constantly focused upon it, but he must see those defects which are obvious and apparent and which would be noticed by a reasonably and ordinarily prudent passerby. White v. City of Alexandria, supra; Ansley v. City of New Orleans, La.App., 168 So. 343”.
In the Ansley v. City of New Orleans case, 168 So. 343, plaintiff sustained injuries as she crossed Union Street in the City of New Orleans, and particularly while stepping from the street to the curb she caught her foot in the metal edging of the curbing which had become displaced, causing her to fall and inflicting the injuries claimed by her. The court held that while a pedestrian may assume a sidewalk is reasonably safe and need not keep his eyes constantly focused upon the sidewalk, he must see those defects which are obvious and apparent and which would be noticed by reasonably and ordinarily prudent passersby; that her failure to see the displaced metal edging of the sidewalk curbing when she was stepping from the street to the curb in daytime was contributory negligence where defect could be noticed by any person exercising ordinary care. This observation was noted from the evidence: “It appears from the record that the eyesight of Mrs. Ansley was good, and the accident occurred in the daytime, and that it occurred as she was stepping from the street to the curbing. There can be no doubt that the duty of a pedestrian to look when stepping from the street to the curb is somewhat greater than it is while walking along a level sidewalk”.
The proof offered by plaintiffs does not sufficiently show that the condition of the sidewalk and curb constituted such a dangerous defect as to make it a trap; or that it was apparently and obviously dangerous to a reasonably careful and ordinarily prudent person, or that the municipality or its officials had notice, actual or constructive, of the existence of such condition and failed within a reasonable time after such notice to have it repaired.
*580 Brief reference will be made to a few of the authorities cited by plaintiffs’ able and diligent counsel. In the case of Rodriguez v. City of Sulphur, La.App., 28 So.2d 771, the plaintiff, while proceeding along a sidewalk, stepped into a hole therein, precipitating her fall, inflicting upon her severe injuries. This hole had been placed in the sidewalk by employees of the municipality for a water meter. It was left open but had covered over with a growth of grass to the sidewalk level. This clearly constituted a hidden defect, otherwise a trap. Under the circumstances of that case, it was held that it had not been established that plaintiff was guilty of contributory negligence as to constitute the proximate cause of the accident.
Parker v. City of New Orleans, La.App., 1 So.2d 123, presented a situation where plaintiff stepped into a hole in the sidewalk covered with leaves and, in attempting to extricate her foot, tripped over the metal binder or edging of the concrete and fell to the street, causing the injuries constituting the basis of her suit. The defect in the sidewalk was so completely covered by the leaves that she could not by a casual glance or inspection detect it. Her injuries were not due to her failure to exer- . cise due care but to her inability to discover the danger.
The case of Miller v. City of New Orleans, La.App., 152 So. 141, also relied upon by plaintiffs, was discussed and distinguished from the aforesaid case of Ansley v. City of New Orleans cited by the defendant in the Parker v. City of New Orleans case. The accident in the Miller case occurred at night, whereas the accident to Mrs. Ansley occurred in the daytime; the defect or condition was clearly visible to Mrs. Ansley but was not so readily visible in the Miller case, due to the position and form of the broken binder located in close proximity to the surface of the street, the colors of which blended in the darkness of the night, unilluminated by the corner street light, making it almost impossible to discern its presence. Under such circumstances, the condition was held to constitute a trap which might easily cause damage. The plea of contributory negligence was sustained in the Ansley case but overruled in the Miller case.
By comparison with the instant case, it is easily seen that different states of facts were involved in the cases relied upon by plaintiffs, and they are thus distinguished from the case at bar.
The evidence here discloses, too, that plaintiff stepped from the sidewalk and curb to the street without paying adequate attention to or watching where she was walking. No sufficient reasons or conditions are shown to relieve her of the duty of keeping a proper lookout.
That this accident occurred is indeed most unfortunate and, notwithstanding our sympathy and understanding for plaintiff in her affliction and suffering, we feel impelled from the record as made up in this case to conclude that the injuries sustained by her were not caused by any fault or negligence of the defendant but attributable only to her failure to exercise ordinary prudence and care.
Finding no error in the judgment appealed from, it is, therefore, affirmed at appellants’ cost.